# EXHIBIT A

IN THE CIRCUIT COURT FOR
HARFORD COUNTY MARYLAND
(Civil Division)

SHARMIRA M. BELIN
211 Mayberry Dr. #201
Aberdeen, MD 21001

    Plaintiff,

v.                                              Case No. _____

EXPERIAN INFO. SOLS. INC.
505 CITY PKWY WEST
ORANGE, CALIFORNIA 92668

Serve: THE CORPORATION TRUST INCORPORATED
       2405 YORK ROAD
       SUITE 201
       LUTHERVILLE TIMONIUM, MD 21093

    Defendant,

CAPITAL ONE, NAT'L ASSOC.
1680 Capital One Drive
McLean, Virginia 22102

Serve: CSC-LAWYERS INCORPORATING SERVICE COMPANY
       7 ST. PAUL STREET
       SUITE 820
       BALTIMORE, MD 21202

    Defendant,

Great Lakes Educational Loan Services, Inc.
121 S. 13TH STREET
SUITE 100
LINCOLN, NEBRASKA 68508

Serve: C T CORPORATION SYSTEM
       5601 SOUTH 59TH STREET
       SUITE C
       LINCOLN, NE 68516

    Defendant,

I.O., INC.
1807 Huguenot Road
Midlothian, VA 23113

Serve: THE CORPORATION TRUST INCORPORATED
      2405 YORK ROAD
      SUITE 201
      LUTHERVILLE TIMONIUM, MD 21093

    Defendant,

PATIENT FIRST CORPORATION
5000 Cox Road, Suite 100
Glen Allen, VA 23060

Serve: BRIAN S. GOODMAN, ESQUIRE
      ONE SOUTH STREET
      SUITE 2600
      BALTIMORE, MD 21202

    Defendant,

CREDIT COLLECTION SERVICES, INC.
725 Canton Avenue
Norwood, MA 02062

Serve: THE CORPORATION TRUST INCORPORATED
      2405 YORK ROAD
      SUITE 201
      LUTHERVILLE TIMONIUM, MD 21093

    Defendant,

ENHANCED RECOVERY CORPORATION, LLC
8014 Bayberry Rd
Jacksonville, FL 32256

Serve: CSC-LAWYERS INCORPORATING SERVICE COMPANY
      7 ST. PAUL STREET
      SUITE 820
      BALTIMORE, MD 21202

    Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff, Sharmira M. Belin, files suit against defendants, and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1692 ("FDCPA"), 15 U.S.C. § 1681 ("FCRA") and Md. Code, Com. Law §§ 14-202 and 13-301.

## PARTIES TO THIS ACTION

2. Plaintiff is a natural person who resides in the state of Maryland.

3. I.O., Inc. d/b/a Receivables Management Systems (hereinafter "RMS") collects debts on behalf of creditors in healthcare, utilities, education, financial services industry among other industries. Defendant is located and/or headquartered in Minnesota and is licensed as a collection agency in Maryland.

4. Patients First Corporation ("PFC") is a health facility that provides a range of urgent care and primary services through local health care centers.

5. Capital One National Association ("Capital One") is large national bank.

6. Credit Collection Services ("CCS") is a debt collector.

7. Great Lakes Educational Loan Services, Inc. ("GLELSI") is loan servicer that services student loans for the United States Department of Education ("USDE").

8. Experian Information Solutions, Inc. ("Experian) is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

9. Enhanced Recovery Company, LLC ("ERC") provides business process outsourcing services that include recovery, outsourcing, receivable management services and market research for customers in insurance, communications, financial services, retail/e-commerce, energy, industrial, professional sectors

3

## FACTUAL ALLEGATIONS

**A.**     **PFC's & RMS' Medical Debt**

10.    RMS is falsely reporting to all three credit reporting agencies, Equifax, Experian and Trans Union (hereinafter, the "CRAs") that Plaintiff owe $1,012 to PFC.

11.    Upon information and belief, PFC falsely told RMS that Plaintiff owed this debt.

12.    PFC never sent a bill stating there was such a bill outstanding.

13.    According to Plaintiff's recollection and records, she does not owe any sum of money to PFC, much less $1,012.

14.    Plaintiff recalls that the highest her balance reached with PFC was $300.

15.    However, Plaintiff's balance was always paid as it was required each time that she went in for a visit to the PFC facility.

16.    Plaintiff has insurance, which pays the bulk sum of the bill for her medical visit, and she pays the co-payment.

17.    According to RMS' reporting, the original balance of the bill was $478.

18.    But RMS claims that the bill increased, at $7 a month, from $847 in February 2017 to $1,012 in January 2019.

19.    Even if there was an outstanding bill, PFC and RMS had no contractual or legal basis to increase the amount from $478 to $807.

20.    Defendants also did not have a right to charge $7 a month, which is 17.5% per annum.

21.    In April 2019, Plaintiff disputed the RMS collection with Experian.

22.    Experian forwarded notice of Plaintiff's dispute to RMS.

23.    RMS did not conduct a reasonable investigation of Plaintiff's dispute, did not make appropriate modifications and did not accurately report the status of the debt.

24. A reasonable investigation would have entailed RMS contacting PFC to obtain records on Plaintiff's payment – insurance and co-payments – to PFC, to obtain an explanation of how the bill increased from $478 to $847 and to obtain a copy of Plaintiff's contract to determine whether PFC could assess 17.5% interest.

25. In response to Plaintiff's dispute, RMS did not contact PFC and did not verify the information it reported to Experian and the CRAs was accurate. Instead of conducting a reasonable investigation, RMS simply confirmed that its reporting to the Experian matched with its computer system that is used to report to the CRAs. RMS took no action to actually verify the information in its computer system was accurate.

26. RMS not only did not correct its errors, but RMS increased the balance by forty-five dollars ($45.00) from $1,012 to $1,0547.

27. In August 2019, Plaintiff disputed the RMS collection with Trans Union.

28. Trans Union forwarded notice of Plaintiff's dispute to RMS.

29. RMS did not conduct a reasonable investigation of Plaintiff's dispute, did not make appropriate modifications and did not accurately report the status of the debt.

30. A reasonable investigation would have entailed RMS contacting PFC to obtain records on Plaintiff's payment – insurance and co-payments – to PFC, to obtain an explanation of how the bill increased from $478 to $847 and to obtain a copy of Plaintiff's contract to determine whether PFC could assess 17.5% interest.

31. In response to Plaintiff's dispute, RMS did not contact PFC and did not verify the information it reported to the CRAs was accurate. Instead of conducting a reasonable investigation, RMS simply confirmed that its reporting to the CRAs matched in its computer system that is used to report to the CRAs. RMS took no action to verify the information in its system was accurate.

### B. Capital One Auto Tradeline

32. Capital One is falsely reporting to all three CRAs that Plaintiff has a $11,172 auto loan that was charged off recently.

33. Further, Capital One is falsely reporting that there was numerous charge-offs.

34. Plaintiff's report with Experian indicates that there are over 50 charge-offs for the Capital One auto loan tradeline.

35. Experian's reporting of the Capital One tradeline is false because there was a single charge-off that occurred well over four years ago in August 2016.

36. Experian should not report any activity for Capital One tradeline after August 2016.

37. Plaintiff's credit score has decreased substantially due to Experian's reporting that there was recent derogatory activity and that there were 50 charge-offs.

38. Further, the balance being reported for the Capital One account is inaccurate.

39. The balance is inaccurate because it includes fees that were inflated, not incurred or not authorized by contract or law.

40. Additionally, the reported balance of $11,172 is misleading because the balance would have been significantly less if Capital One's did a reasonable, legitimate disposition of the collateral (automobile) for the loan.

41. Although Capital One was required by law to notify Plaintiff of the scheduled sale of the automobile and the amount required to cure the default, Capital One did not notify Plaintiff and therefore, she was deprived of an opportunity to cure the default or attend the sale.

42. Had Plaintiff had an opportunity to attend the sale, she or a friend could have bought it back and not lost the equity or the price could have bided up.

43. Upon information and belief, Capital One damaged the automobile before selling it or conducted an unreasonable sale of the automobile.

44. Plaintiff disputed the account directly to Capital One and the CRAs regarding the inaccuracies on numerous occasions.

45. The CRAs forwarded notice of Plaintiff's dispute to Capital One.

46. Capital One did not conduct a reasonable investigation of Plaintiff's dispute, did not make appropriate modifications and did not accurately report the status of the debt.

47. A reasonable investigation and response would have entailed Capital One accessing its records, identifying that the charge-off occurred in August 2016, that there was no subsequent activity and reporting back to the CRAs that there was no activity on the account after August 2016.

48. Further, Capital One would have discovered the balance was inaccurate for it included fees that should not have been tacked onto the loan.

49. Additionally, if Capital One conducted a reasonable investigation, it would have looked into the merits of Plaintiff's contentions as to why a reasonable sale of the automobile should have resulted in a much lower balance and at a minimum, Capital One's reporting of the debt would have included Plaintiff's version of the facts.

50. Instead of conducting a reasonable investigation and reporting accurate results of such an investigation, Capital One merely confirmed that the information on the ACDVs from the CRAs matched the information in Capital One's system that is relied on for reporting to the CRAs. Capital One's investigation did not verify the information in its system was accurate. Nonetheless, Capital One reported back to the CRAs that it verified the accuracy of the disputed information. Making matters worse, Capital One did not even report that Plaintiff continued to dispute the accuracy of the information Capital One verified as accurate.

### C.    USDE Student Loan Tradelines

51.    Experian is reporting two student loans furnished by the US Dept of ED/GLELSI and US Dept of ED/GSL/ATL

52.    Experian's reporting of the US Dept of ED/GLELSI is inaccurate because it is a duplicate of US Dept of ED/GSL/ATL but appears as a separate derogatory student loan on Plaintiff's report.

53.    Experian's reporting of the US Dept of ED/GSL/ATL was inaccurate because it was reported as having an unpaid balance when the account had been paid in full.

54.    Further, the US Dept of ED/GSL/ATL tradeline does not clearly identify the source of information or furnisher of the tradeline. Specifically, the servicer of the student loan is not identifiable from the name displayed on the tradeline or the contact information.

55.    Plaintiff disputed the two student loans with the CRAs regarding the inaccuracies on numerous occasions.

56.    The CRAs forwarded notice of Plaintiff's dispute to GLELSI.

57.    GLELSI did not conduct a reasonable investigation of Plaintiff's dispute, did not make appropriate modifications, and did not accurately report the status of the debt.

58.    A reasonable investigation would have resulted in GLELSI discovering the same account was being reported twice and GLELSI reporting back to the CRAs that the duplicate tradeline needs to be removed from the reports.

59.    Instead of conducting a reasonable investigation and reporting accurate results of such an investigation, GLELSI merely confirmed that Plaintiff had a student loan account and did not investigate whether the account was being reported twice. GLELSI reported back to the CRAs

that the student loan was accurately appearing on the reports and failed to note that Plaintiff disputed GLELSI's conclusion of its investigation.

### D. CCS, PRA & ERC Collections

60. CCS falsely reported to Experian that Plaintiff owed $1,000 to Nationwide.

61. In turn, Experian parroted this information without any investigation.

62. Experian was required to filter CCS information because CCS is not reliable.

63. Although CCS is a debt collector, it did not notify Plaintiff of her FDCPA rights.

64. Plaintiff disputed that she owed $131 for the CCS collection with Experian.

65. Experian forwarded notice of Plaintiff's dispute to CCS.

66. CCS did not conduct a reasonable investigation of Plaintiff's dispute, did not make appropriate modifications and did not accurately report the status of the debt.

67. A reasonable investigation would have entailed CCS contacting Nationwide to verify there was an unpaid balance.

68. However, CCS did not contact Nationwide during its investigation of Plaintiff's dispute. Rather, CCS verified that the *inaccurate* information in its computer system matched the information on the ACDV from the CRAs.

69. Experian is also reporting collections by Portfolio Recovery Associates ("PRA") and Enhanced Recovery Corporation ("ERC"), both of which contain inaccurate information.

70. Both PRA and ERC are well-known to be unreliable sources of information and require thorough investigations and system mechanism to assure the information furnished by them are neither inaccurate nor incomplete.

71. Nonetheless, Experian utilizes the same system for furnishing information from reliable sources as it uses for unreliable sources, such as debt collectors PRA and ERC.

72. Experian is reporting that the PRA collection derived from a Capital One account. This collection is inaccurate because Plaintiff did not have a Capital One account with an account number of 517805XXXXXXXXXX that was opened on July 25, 2017 with a balance of $406.

73. Further, upon information and belief, PRA has not acquired any debt from Capital One that is associated with Plaintiff.

74. Experian is reporting that the ERC collection derived from a SPRINT bill.

75. The ERC collection is inaccurate because Plaintiff only owed $500 to SPRINT.

76. Further, ERC is not accurately or completely reporting the date the debt was opened or went in default.

77. ERC did not notify Plaintiff of her rights to dispute the debt.

78. Plaintiff has not received any communication from ERC regarding the SPRINT bill.

79. SPRINT has not notified Plaintiff that ERC acquired the debt.

80. Plaintiff disputed the ERC collection with Experian.

81. Experian forwarded the notice of Plaintiff's dispute for ERC to investigate.

82. ERC did not investigate the accuracy of the balance and ignored Plaintiff's complaint that the open and default dates were not being reported.

83. Instead of investigating Plaintiff's dispute, ERC verified that the information in computer system that served as source of information for its monthly reporting matched with the information that Experian was reporting.

87. A reasonable investigation by ERC would have involved ERC contacting SPRINT to verify the amount was accurate. Additionally, ERC would have learned that its reporting was incomplete and modified its reporting to include the correct open and default dates.

88. Experian parroted ERC's investigation results.

89. Experian knows ERC is not a reliable source of information.

90. Experian knows ERC does not conduct reasonable investigations of credit disputes.

91. Experian knowingly parroted ERC's information in credit reports that were furnished to third parties before and after Plaintiff's dispute.

## COUNT ONE: VIOLATIONS OF FDCPA

92. Plaintiff incorporates the preceding allegations by reference.

93. Defendants RMS, CCS and ERC violated 15 U.S.C. § 1692e by attempting to collect a debt or amount of debt that was not owed.

94. Defendants RMS, CCS and ERC violated 15 U.S.C. § 1692e by communicating false and misleading information to the CRAs.

95. Defendant RMS violated 15 U.S.C. § 1692e by inflating the debt amount with unauthorized fees and/or interest.

96. Defendant ERC violated 15 U.S.C. § 1692g by falsely to disclose Plaintiff's rights under the FDCPA.

97. Defendant ERC violated § 1692e by attempting to collect on a debt that it had no right to collect on.

98. As a result of Defendants' violations, Plaintiff suffered actual damages consisting of both pecuniary expenses, humiliation and other emotional distress.

99. Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering it liable for actual and statutory damages pursuant to §§ 1692k(a)(1),(2)(A).

## COUNT TWO: VIOLATION(S) OF MCDCA

100. Plaintiff incorporates the preceding allegations by reference.

101. Defendants RMS, CCS and ERC violated Md. Code Ann., Com Law § 14-202(11) by violating the FDCPA as described in paragraphs 93 thru 97.

102. Defendants RMS, CCS and ERC also violated Md. Code Ann., Com Law § 14-202(8) because they knowingly violated the FDCPA as described in paragraphs 93 thru 97

103. Defendant PFC instructed RMS to collect on the inflated debt and is responsible for RMS' illegal debt collection activity.

104. Under the theory of respondeat superior, the principal, PFC, is responsible and liable for the violations of the agent, RMS.

105. As such, Defendant PFC violated Md. Code Ann., Com Law § 14-202(8) when RMS attempted to collect on the inflated debt.

106. Defendants' violations caused the Plaintiff to endure damages including credit damage, injury to financial reputation, out-of-pocket costs, mental and emotional distress, rendering Defendants liable for actual damages in an amount to be determined pursuant to Com Law § 14-203.

## COUNT THREE: VIOLATION(S) OF MCPA

107. Plaintiff incorporates the preceding allegations by reference.

108. Defendant PFC violated the MCPA, Md. Code Ann., Com Law §13-301(14)(iii) when the PFC violated Com Law §§ 14-202(8).

109. Defendants RMS, CCS and ERC violated the MCPA, Md. Code Ann., Com Law §13-301(14)(iii) when the RMS violated Com Law §§ 14-202(8) and 14-202(11).

110. Defendants' violations caused the Plaintiff to endure damages including credit damage, injury to financial reputation, out-of-pocket costs, mental and emotional distress.

## COUNT FOUR: VIOLATIONS OF FCRA

111. Plaintiff incorporates the preceding allegations by reference.

112. Defendant Experian violated 15 U.S.C. 1681g by failing to clearly and accurately disclose the source of information for GSL/ATL tradeline.

113. Defendant Experian violated 15 U.S.C. 1681e(b) by blindly relying on unreliable sources in its preparation and furnishing of credit reports contain derogatory and inaccurate information.

114. Defendant Experian violated 15 U.S.C. 1681i(a)(2) by failing to forward all relevant information or failing to timely forward all relevant information to the furnishers.

115. Defendants Capital One, GLESLI, RMS, CCS and ERC violated 15 U.S.C. § 1681s-2(b)(1)(A)-(E) by failing to conduct a reasonable investigation, failing to consider all relevant information, failing to report the results of its investigation to the CRAs, and failing to modify or delete inaccurate or incomplete or unverifiable information.

116. Defendants Capital One and GLESLI violated 15 U.S.C. § 1681s-2(b)(1)(C)-(E) by failing to instruct the CRAs to report the proper dispute status.

117. Defendant Experian violated 15 U.S.C. 1681i(a)(1),(4),(5) by simply forwarding notice of the dispute without conducting a reasonable investigation that entailed a review and consideration of all relevant information in Plaintiff's dispute and failing to delete or modify information that was found to be inaccurate, incomplete or not verified.

118. Defendant Experian violated 15 U.S.C. 1681i(a)(6) by failing to notify Plaintiff of the results of its reinvestigation of several disputes.

119. Defendant Experian violated 15 U.S.C. 1681i(a)(7) by failing to provide a description of its investigation, including the identification of the source of information, of Plaintiff's dispute of the USDE tradelines.

120. Defendants' failures to comply with its obligations under 1681s-2(b)(1) to investigate the merits of Plaintiff's dispute were the result of Defendants' deliberate policy to restrict their investigation of consumers' disputes to merely confirming the information was reported accurately from its computer screen instead of investigating whether the information on its computer screen is accurate.

121. Defendants Capital One's and GLELSI's failure to comply with its obligation under 15 U.S.C. § 1681s-2(b)(1) to report that there was an ongoing unresolved dispute on the debt was the result of Defendant's deliberate policy to never report ongoing disputes.

122. Defendants RMS', CCS' and ERC's failures to comply with its obligation under 15 U.S.C. § 1681s-2(b)(1) were the result of a deliberate policy to restrict their investigations to information in its possession and to never contact the creditor or another third party that is in the possession to verify the accuracy of the information the Defendants report.

123. Defendant Experian's failure to comply with its obligations under 15 U.S.C. §§ 1681i(a) to investigate the merits of Plaintiff's dispute was the result of Defendant's deliberate policy to rarely, if ever, conduct a reasonable investigation and relying strictly on the furnishers' investigation of a consumer's dispute.

124. As a result of Defendants' foregoing violations, Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to credit profile and reputation, embarrassment, humiliation and other mental and emotional distress.

125. Defendants' violations were deliberate and intentional, which gives rise to a willful violation, rendering Defendant liable pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

126.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n&o.

WHEREFORE, your Plaintiff demands judgment for actual and statutory damages against Defendants, jointly and severally; for her attorney's fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

**TRIAL BY JURY DEMANDED**

Respectfully submitted,

*/s/ Sharmira Belin*

Sharmira M. Belin
211 Mayberry Dr. #201
Aberdeen, MD 21001
(443) 858 - 1329
bbsharmira@gmail.com